## CIRCUIT COURT OF BALTIMORE CITY.

Filed December 7, 1916.

JACOB H. HOLLANDER AND STELLA B. HOLLANDER, TRUSTEES AND EXECUTORS UNDER THE LAST WILL AND TESTAMENT OF JOSEPH M. HOLLANDER, DECEASED, ET AL.,

VS.

MAX E. GOLDSMITH, ET AL., TRADING AS HIRSHBERG, HOLLANDER & CO.

*Venable, Baetjer & Howard* for plaintiffs.

*Martin Lehmayer* for defendants.

DAWKINS, J. —

The bill in this case alleges that Joseph M. Hollander died May 2, 1915, and at the time of his death said Hollander was a member of the firm of Hirshberg, Hollander & Co. (which, for convenience, will be hereafter called the firm). The said firm was conducting business under an agreement dated December 16, 1912, which provided that the deceased should be entitled to receive 25 per cent of the profits after there had been paid out of said profits interest at the rate of 6 per cent. per annum on the amount of capital contributed by each partner and the payment of $3,000 per annum to Moses H. Hirshberg. The surviving partners in case of death of any one had the right to carry on the business, and the representatives of any deceased partner was entitled to receive until the end of the fiscal year the share to which said partner so dying would have been entitled to had he survived until the end of such fiscal year. The capital of one partner, Moses H. Hirshberg, was fixed, as hereinafter stated. At the end of such fiscal year the surviving partners had two options:

1. To continue the business to the end of the period named in the agreement and for the purposes of the business to retain the deceased partner's share (ascertained by having on the sixteenth day of December a full and particular account in writing of the affairs of the firm for the purpose of determining the condition of the business for the preceding fiscal year), for the period of two years from the end of such fiscal year upon the payment of 6 per cent. interest on such ascertained share until with the privilege of paying any amount at any time during said two years.

2. To liquidate the business. The manner of liquidation is fully set forth in the agreement. It need be only specially noted that each partner should have the same proportion that the capital that each may have standing to his credit at the end of the process of liquidation bears to the whole capital remaining at the end of said period.

Negotiations for settling or adjusting the interest of the deceased in the firm were begun about October, 1915, and continued for some weeks. Through all of these negotiations the plaintiffs refused absolute confidence in the firm in getting information and data to enable a proper settlement to be made. About December, 1915, one of the firm, Mr. Goldsmith, who attended to the books, gave a statement to the plaintiffs which, while it turned out to be an approximate statement of the business for 1914, yet it was given with the assurance that it would not be materially different from what the business would show for 1915. This statement showed that the physical assets of the business amounted in value to $280,000. At the same time an estimate of "actual value" was given amounting to $237,500. The estimated earnings were represented at about $50,000. The plaintiffs claim that in view of the representation of value made by the firm that they were induced to accept for their interest in the firm $85,000, made up as follows:

One-fourth of tangible assets,
or one-fourth of $280,000 . . $70,000.00

One-fourth of profits 1915 (as stated by Mr. Goldsmith), $12,500.00, less drawings $9,000.00 ............... 3,500.00

Allowance for interest in good will, brands, firm name, trade-mark and intangible assets ................... $11,500.00

$85,000.00

This settlement was made on December 14, 1915, for the year ending December 16, 1915.

On December 15, 1915, the day after this settlement was made, the partners of the firm had a statement in their possession showing the profits to have been $70,000 for the year ending December 16, 1915, instead of $50,000, as represented. The firm books show there were $36,709.12 cash in hand, instead of $16,000, as represented on December 14, 1915. The plaintiffs allege that fraud, deception and misrepresentation were practiced upon them to bring about the settlement based on the figures named. The defendants, on the other hand, say that the sum arrived at after full conference to be allowed for the plaintiffs' interest was $85,000,

which so far from being too little was really more than the value of the deceased partner's interest if fixed on a proper basis of valuation. They allege they disclosed all possible information to the plaintiffs. The contention of the defendants is, moreover, that the only interest that Joseph M. Hollander had in the business was in the profits of the same, which interest is established by the uniform course of dealing between the partners. That the item of good will was never considered on their books. This course of dealing, taken in connection with the articles of co-partnership, tend to show that even if there be an ascertainable value for the good will at the time of the death of Joseph M. Hollander, that his estate is not entitled to any part of it, as it belongs, under the articles of agreement, to the original members of the firm and not the members of the firm in the class with the deceased. Admitting even the contention of the plaintiffs as to the true construction of the co-partnership agreement and the status of ownership of the firm's assets, then the defendants contend that the $85,000 agreed upon, as above stated, was fixed as a "lump sum" for the deceased's interest.

There are some conflicts in the testimony, but there are certain facts that are established. This firm did for a number of years a very profitable business, at one time making as high a percentage of capital as 35 per cent. The business still seems to be a very profitable one. There were numerous articles of partnership existing in the lifetime of the firm and its membership varied by taking new members into the firm, as well as by various changes of interest. Whilst the various agreements (the first offered in evidence being dated in 1896 and the last in 1912) relate back to each other, yet we must be guided by the terms of the last one, under the terms of which the business was being conducted at the time of the death of Joseph M. Hollander. Under this agreement the six partners were said to have various odd amounts, making up the firm's capital, which amounts were made up from time to time of the assets of the old firm immediately preceding it. This last agreement, dated December 12, 1912, provided for the commencement of the firm December 16, 1912, and for its termination on the 17th of December,

1917. The capital was contributed in various amounts, not in cash, but in the sum standing to the credit of the partners, as shown by the inventory of assets and liabilities of the preceding firm of Hirshberg, Hollander & Co. The profits were to be applied as follows: Moses H. Hirshberg, $3,000 and 6 per cent. on the amount of his capital contributed, he to have his portion before any of the partners should be entitled to have anything. He was to be exempt from losses and to receive no other part of the earnings or profits. After the payments to Moses H. Hirshberg and the payment of the interest on the amount of capital contributed by each of the other partners, the other five partners were to receive the balance of the profits in various amounts. The deceased was to receive one-fourth of the same.

At the conference in Mr. Baetjer's office in December, 1915, when the $85,000 was agreed upon, no clear contention was made as to depreciation of machinery and the plant, but the subsequent valuation showed that it was worth very much less than the sums for which it was carried on the books. There can be but little doubt that the memo. estimate of the business as of 1914, was used as some guide to fix values of the business in 1915, at the time of settlement in December, 1915. The memo. estimate of "actual value" does not seem to have been considered. The plaintiffs had no other means of knowing since the books for 1915 had not apparently been posted (although they seem to have been footed up on or before the next day) sufficiently well as to enable the partners to have actual figures of the business earnings for the year.

There must have been some discussion of the earnings for the year just closing. There can be but little doubt that the cash item of $16,000 was misleading as were the profits which were stated to be about $50,000 instead of about $70,000, as they later appeared to be. There was some talk at the conference about the good will, as also about cash earnings of the business with the effect of the war as likely to depreciate the profits. Whilst there seems to have been a full and prolonged discussion of the firm's affairs, there is nothing to show that the surviving partners ever reduced to actual figures the status of the business prior to the settlement as they were bound to do. That it seems clear that there were no full and particular statement of the condition of the whole business, and the profits at that time and that there were no frank and full statement of the same then furnished. It is equally clear that the settlement reached was based upon the data then imperfectly furnished to the plaintiffs, at the time when the firm was absolutely depended upon by the plaintiffs to furnish such information as they were bound to give.

The defendants no doubt offered, and the plaintiffs accepted the $85,000 as a lump sum settlement, placing a valuation for the different items as stated in the bill.

Whilst not without difficulty there are certain principles that should control this case. One who seeks equitable relief must do equity. Surviving partners are in effect trustees for the partner decedent. No settlement of a deceased's interest should stand unless there is a full knowledge of the business. If the representatives of a decedent have not had such knowledge, they should not be bound by a settlement made in the absence of a full disclosure when all of the facts are in the hands of the surviving members of the firm. There can be no doubt as to the power of a court of equity to reform an improper settlement, as one made in violation of any of the conditions indicated would be. It is conceded that $7,000 more was paid than the actual book value shows, and that there was a fair settlement of tangible assets so that the only real contention seems to be that the plaintiffs were mislead as to the cash on hand, which was stated to be $16,000, when in fact it was $36,000, and as to the profits for 1916, which were alleged to be $50,000, when they were in fact about $70,000. The plaintiffs contend that they could not have been induced to accept $85,000 in full settlement, had they have believed that the profits were so large and the business as prosperous as shown. This business had grown from nothing (at one time, the firm was practically insolvent) to a value of over $300,000, and yielding as before stated as much as 35 per cent. on the capital. It was the duty of the surviving partners to give to the plaintiffs a full, clear and complete state-

ment of all of his interests in the co-partnership. 100 Md., 185.

The trademarks, brands and good will constituted a part of the firm's property, and as such the valuation of his share in the same should have been considered in the settlement.

Ibid. The good will is not easy to determine under the facts of the case.

The profits should have been known and given. Depreciation no doubt has taken place, but it would not seem righteous to say that the books were accurate for all other purposes, until it came to a settlement with plaintiffs. Only in 1912 everything was carried on the books at full value, and the different partners' portion of capital fixed by such values.

In 92 Maryland, 114, Welbourne vs. Kleinle, the facts are very similar to those of this case. In that case a full statement was submitted by the surviving partner to deceased's representatives and a definite proposition made to buy out the interest. The executor filed a bill alleging that the deceased husband had absolute confidence in the partner, that a fair settlement would be made. A figure was agreed upon. It was subsequently learned that the fixtures and machinery were valued at a much larger sum. The excess was decreed to be paid.

It is not absolutely necessary to establish actual fraud practiced by the firm, holding such a confidential relation as asserted in this case. The burden is upon the firm to establish the perfect fairness, adequacy and equity of the settlement transaction. It was the firm's plain duty to render an accurate statement of the condition of the business when negotiating for the purchase of the interest of a deceased person. Without such full disclosure the purchase should not stand. 92 Md., 123, Welbourne vs. Kleinle; Ogden vs. Astor, 4 Sanford, S. C. 350.

A statement of the business of a firm necessarily implies an exhibition of its existing condition as disclosed by its books (the only authentic record of its condition from time to time). An arbitrary estimate of the condition representing the idea of a prospective purchase cannot be proper any more than an innocent withholding of information.

With the statement of the principles of the law and considering the testi-mony, the following conclusions have been reached:

1. The plaintiffs are entitled to have the contract of settlement formed and to have a complete and accurate accounting of the business to the date of settlement, which the parties fixed on December 16, 1915. If this be had it should be of the whole business.

2. There should be more depreciation charged against the machinery since 1912, the date of the formation of the last co-partnership. This cannot be ascertained from the evidence. It would seem difficult to ascertain it for that period, in the absence of any evidence of its condition in 1912.

3. There is no evidence in the case by which the good will and intangible assets can be ascertained, though there is evidence from which these can be held to have some value.

4. Interest should be allowed on the capital balance belonging to the deceased, which seems to be $69,979.80 (less his portion of any proper deductions) in accordance with the terms of the co-partnership since December 16, 1915.

5. The proportion of profits, one-quarter of $68,934.24, seems to be $17,233.56 to which the plaintiffs are entitled.

6. Drawings of deceased for 1915 are $9,012.35, leaving $8,221.21 account of profits, $3,500 of which the plaintiffs admit to have received, leaving $4,022.42.

7. The plaintiff in the settlement did not get more than one-quarter of $280,000 or $70,000 for the tangible assets, which would leave $11,500 for the intangible assets, because the first items from the figures actually furnished, so that the amount allowed for the intangible assets, whilst arbitrarily fixed, must to have been in effect, agreed upon to make the total.

8. With no allowance for depreciation and the practically agreed allowance of $11,500 for good will, etc., though based upon erroneous figures of the statement of the business, both of which items are uncertain of definite ascertainment, then the allowance of $4,022.42 for the proportion of unpaid profits and the allowance of one-quarter of the difference between the real book capital, less profits and the

$280,000 (without depreciation on December 16, 1915), in addition to the sum of $85,000 already allowed, would seem to be a proper settlement under all the circumstances; if after deducting these profits the real book values without depreciation shows a sum less than $280,000, then such proportion should be deducted from said profits already suggested as being.

I am prepared to sign a decree in accordance with the views expressed in items 1 to 7 as above, and let the further necessary proceedings indicated be had.

If the rights thus decided are not availed of, I feel, without establishing any rights contrary in what has been already indicated, that the view indicated in item 8 is a proper determination of the matter as now before the court, but will not sign a decree in accordance with said last mentioned item unless the parties express their assent to the discontinuance of the proceedings.