NORMA J. PEARSON (FORMERLY NORMA J. MYERS),
INDIANA BANK AND TRUST COMPANY ADMINISTRATOR
DE BONIS NON OF THE ESTATE OF FRED C. MYERS,
DECEASED *v.* BARTON N. HAHN AND WARREN MCDANIEL.

[No. 1-775A128. Filed August 24, 1976.]

*Frank E. Spencer*, of Indianapolis, *Sam Blue, McNutt, Hurt & Blue*, of Martinsville, for appellants.

*James M. Klineman, Klineman, Rose and Wolf*, of counsel, of Indianapolis, *Ralph Foley, Foley & Foley*, of Martinsville, for appellees.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Plaintiffs-appellants Norma J. Pearson, formerly Norma J. Myers (hereinafter Norma) and Indiana Bank and Trust Company, Administrator De Bonis Non of the estate of Fred C. Myers, deceased (hereinafter Bank and Fred respectively) appeal from a judgment of the trial court finding that Norma should take nothing on her complaint seeking the appointment of a receiver and an accounting against defendants-appellees Barton N. Hahn and Warren McDaniel (hereinafter Barton and Warren respectively).

We reverse.

## FACTS

The facts necessary for our disposition of this appeal are as follows: On July 17, 1967, Fred, Barton and Warren executed a partnership agreement, the relevant parts of which are set forth *infra*:

"PARTNERSHIP AGREEMENT

"This Agreement of Partnership made this 17 day of July, 1967, by and between WARREN McDANIEL, FRED C. MYERS and BARTON N. HAHN of Martinsville, Morgan County, Indiana, WITNESSETH THAT:

\* \* \*

"1. The partnership shall be for the conduct and carrying on the leasing of real estate, buying and selling real estate, and other business of a similar nature.

"2. The name of the partnership shall be Martinsville Leasing Company.

"3. The partnership shall begin on the 17th day of July, 1967, and shall continue until terminated as provided by law.

\* \* \*

"6. Each partner shall be entitled to equal drawing accounts, as shall be hereafter mutually agreed upon in view of the profits of said business, but with the condition that all such sums in the aggregate for a term of one year shall not exceed a partner's share of the profits of said partnership, and if they do, he shall repay the sum at the close of a year term; the agreement being that each partner shall share equally in all of the profits and losses that may arise out of, or occur in, the prosecuting of the said partnership business.

\* \* \*

"10. In the event any partner resigns from the partnership or disassociates himself from the partnership for any reason, the remaining partners shall have the right to purchase the interest of the former partner.

\* \* \*"

On December 31, 1968, Fred, Barton and Warren executed a second partnership agreement which provided in relevant part as follows:

"PARTNERSHIP AGREEMENT

"This Agreement of Partnership made this 31 day of Dec., 1968, by and between WARREN McDANIEL, FRED C. MYERS and BARTON N. HAHN of Martinsville, Morgan County, Indiana, WITNESSETH THAT:

"1. The partnership shall be for the conduct and carrying on of the leasing of real estate, buying and selling real estate, and other business of a similar nature.

"2. The name of the partnership shall be Martinsville Plaza Company.

"3. The partnership shall begin on the 1st day of Jan. 1969, and shall continue until terminated as provided by law.

\* \* \*

"6. Such partners shall be entitled to equal drawing accounts, as shall be hereafter mutually agreed upon in view of the profits of said business, but with the condition that all such sums in the aggregate for a term of one year shall not exceed a partner's share of the profits of said partnership, and if they do, he shall repay the sum at the close of a year term; the agreement being that each partner shall share equally in all the profits and losses that may arise out of, or occur in, the prosecuting of the said partnership business.

\* \* \*

"10. In the event any partner resigns from the partnership, or dies during the continuance of this agreement, or disassociates himself from the partnership for any reason, the remaining partners shall have the right to purchase the interest of the former partner by paying for such interest the book value or fair market value thereof, determined by a fair market appraisal, whichever sum is lower, *provided that written notice of such intention to purchase shall be served by the remaining partner upon the former partner, his heirs, executors, administrators, or assigns, within sixty (60) days after such former partner disassociates himself from the partnership for any reason.* Completion of the purchase shall be made as soon as practical after the service of such notice of intention to purchase the former partner's assets. During such sixty (60) day period the former partner, his heirs, executors, administrators, and assigns shall have no rights in the partnership except to share in the net profits during such period.

\* \* \*" (Our emphasis.)

On July 24, 1971, Fred died testate leaving Norma as his sole heir. On July 30, 1971, Barton (one of Fred's ex-partners) qualified as executor of Fred's estate. On January 29, 1973, Bank was appointed administrator d/b/n following Barton's resignation.

On September 16, 1971, within sixty days of Fred's death, pursuant to their partnership agreement, Barton and Warren delivered the following notice to Byrl L. Eltzroth, attorney for the estate of Fred:

To: Barton N. Hahn, Executor,
Estate of Fred C. Myers

In accordance with the terms of the partnership agreement entered into by Barton N. Hahn, Warren McDaniel and Fred C. Myers, Known as the Martinsville Plaza Company, in view of the death of Fred C. Myers, we, the remaining partners, hereby give notice of our intention to purchase the former partner's interest.

September 16, 1971      /s/ Barton N. Hahn
                        Barton N. Hahn
                        /s/ Warren McDaniel
                        Warren McDaniel

\* \* \*"

The record discloses that shortly after March 30, 1972, Barton and Warren caused an appraisal of the assets of Martinsville Plaza Company to be made by Hans Nowa as of July 24, 1971, the date of Fred's death.

The appraisal showed a mortgage on the property in the amount of $550,000.00 The value of the assets totaled $505,000.00.

Paul Deem, an appraiser employed by Norma, was in substantial agreement with Nowa's appraisal, but showing the value of the assets to be $521,350.00. Both appraisal reports showed the liabilities of Martinsville Plaza to exceed the value of the assets.

Norma challenged the accuracy of Nowa's appraisal. The property appraised was limited to 5.43 acres transferred by Warren to the partnership for the purpose of executing a lease to Danner's, Inc. Norma argued to the trial court that Martinsville Plaza had additional assets.

Harry Johnson, a certified public accountant, testified that the bookkeeping of Martinsville Leasing and Martinsville Plaza had been to some extent commingled.

Norma, through her attorney, in June, 1972, requested a financial accounting of both Martinsville Leasing and Martinsville Plaza from Barton, who was then still serving as executor of Fred's estate. This request was refused.

Norma filed her complaint on July 13, 1972, seeking the appointment of a receiver and for an accounting.[1]

On February 20, 1975, the trial court made findings and entered its judgment, the relevant parts of which are set forth below:

"FINDINGS OF FACT RELATING TO
MARTINSVILLE LEASING COMPANY

". . . Title to the real estate was not taken in the name of the partnership but in the names of the individual partners and their wives. Financing for construction of the

---

1. IC 1971, 23-4-3-1 *et seq.* (Burns Code Ed.).

stores on the real estate was obtained in the names of the individual partners and their wives, and existing leases with the tenants of said stores are executed by the individual partners and their wives as Lessors under the leases. Therefore, at the time of death of Fred C. Myers, and at the time of trial, the partnership entity of Martinsville Leasing Company had no assets, nor did it have any liabilities, since all of the assets and liabilities connected with the A & P and Hook's shopping area complex were held or owed by the partners and their wives as individuals.

\* \* \*

"CONCLUSIONS OF LAW AS TO THE MARTINSVILLE LEASING COMPANY

"1. Upon the death of Fred C. Myers, his undivided interest in the real estate on which the A & P Grocery Store, Hook's Drug Store and residential rental property are now located passed directly to his surviving widow, Norma Myers (now Pearson) as the surviving tenant-by-the entirety.

"2. Since the decedent's interest in said real estate passed to his widow by operation of law and since the partnership known as Martinsville Leasing Company had no assets in its name, the provisions of the Indiana 'Accounting by Surviving Partners Act' would have no application to this real estate.

"3. Norma J. Pearson, as the surviving widow of Fred C. Myers, deceased, is a one-third owner of said real estate and is entitled to a one-third share in any net profits that have been generated from the leases of improvements on said real estate since July 24, 1971, and one-third of all net profits that may be generated from said real estate in the future.

"FINDINGS OF FACT RELATING TO MARTINSVILLE PLAZA COMPANY

"1. On November 7, 1966, Warren McDaniel entered into a contract to purchase an unimproved tract of real estate located at the intersection of Burton Lane and the proposed Indiana State Highway 37 By-pass in Morgan County, Indiana, which tract contained approximately 22 acres, at a purchase price of $40,000.00.

"2. . . .

"3. The Martinsville Plaza Company, a partnership consisting of Warren McDaniel, Barton N. Hahn and the decedent, Fred C. Myers, was formed on January 1, 1969,

pursuant to a written Partnership Agreement dated December 31, 1968.

"4. . . .

"5. In March, 1969, Warren McDaniel paid the balance due on the contract of purchase of the 22-acre tract and a deed, dated March 15, 1971, and recorded March 29, 1971, was executed and delivered to Warren McDaniel and his wife for the real estate. John Fewell still owed Warren McDaniel some money for unpaid payments under the contract of purchase.

"6. Following the formation of the Martinsville Plaza Company, the members commenced negotiations with several possible tenants and negotiations for possible financing of building construction which were not successful. In March, 1971, a Lease was entered into by the Martinsville Plaza Company, as Lessor, with Danners, Inc., as Lessee, for real estate and building to be used as a Danners 3-D Discount Department Store. The building to be constructed and leased was to have surrounding parking. In pursuance of said Lease Agreement, in May, 1971, Warren McDaniel and his wife conveyed a 5.43 acre tract to Martinsville Plaza Company, with the understanding that Martinsville Plaza Company would pay Warren McDaniel and John Fewell the sum of $8,000.00 per acre for said 5.43 acre tract.

"7. . . .

\* \* \*

"13. The remaining real estate in the original 22-acre tract was titled in the name of Warren McDaniel and his wife on the date of death of Fred C. Myers and the Martinsville Plaza Company had no interest in any real estate except for the 5.43 acre tract on which the Danners store was located. That since the date of death of Fred C. Myers, the surviving partners, Warren McDaniel and Barton N. Hahn, have entered into additional leases and further development of the balance of said 22-acre tract.

"14. As of July 24, 1971, the date of death of Fred C. Myers, and for a period of sixty days thereafter, the book value of the interest of Fred C. Myers in the Martinsville Plaza Company was a negative value.

"CONCLUSIONS OF LAW AS TO THE
MARTINSVILLE PLAZA COMPANY

"1. As of July 24, 1971, the date of death of Fred C. Myers, the only asset of the partnership known as Martinsville Plaza Company was the Danners building and the 5.43

acres of land on which the Danners building was located, which real estate was titled in the partnership name.

"2. . . .

"3. The provisions of paragraph numbered 10 of the Martinsville Plaza Partnership Agreement are binding on the parties to such agreement, including their heirs, executors or assigns.

"4. The defendants and surviving partners, Warren McDaniel and Barton N. Hahn, gave sufficient notice under the requirements of paragraph 10 of the Partnership Agreement of their intention to purchase the interest of Fred C. Myers in the Martinsville Plaza Company.

"5. . . .

"JUDGMENT

"IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by this Court all as follows:

"1. That the Petition of the plaintiff, Norma J. Myers (now Pearson) for a Receivership and for an accounting be, and the same hereby is denied, and that the plaintiff, Norma J. Myers (now Pearson), take nothing on her said Petition.

"2. . . .

\* \* \*

(d) The Indiana Bank and Trust Company, as Administrator De Bonis Non of the Estate of Fred C. Myers, is ordered to comply with the provisions of paragraph numbered 10 of the Martinsville Plaza Company Partnership Agreement, by conveying to Warren McDaniel and Barton N. Hahn, all of the interest of Fred C. Myers in the Martinsville Plaza Company by appropriate deed or assignment and for no money consideration from said surviving partners.

\* \* \*"

## ISSUES

1. Whether the giving of a written notice by a surviving partner to himself as executor of the estate of his deceased partner is such notice as contemplated by an Article of Partnership provision giving the surviving partners the right to purchase the interest of a deceased partner if they give written notice of their intention to purchase within 60 days of his death to his heirs or executor.

2. Whether the giving of such notice to himself (as executor) made inapplicable all of the provisions of law as to dissolution of the partnership, such as a prompt sworn accounting, posting of bond, prompt closing of partnership, or appointment of a receiver.

## DISCUSSION AND DECISION

Because of the similarity of Norma's issues one and two, we have elected to consolidate and discuss them concurrently.

Norma argues that the trial court erred in its conclusions of law three and four as respects the Martinsville Plaza property finding that Barton had fulfilled his duties of giving notice that the partnership intended to purchase Fred's interest by giving such notice to himself as executor of Fred's estate. Norma contends that since Barton and Warren were fiduciaries the giving of notice as respects proposed action which would conflict with their personal interests is tantamount to no notice at all.

We agree that when a partner, who in addition is serving in the capacity of executor of a deceased partner's estate gives notice of his intent to continue the operation of the partnership, the possibility of a conflict of interest arises, and such transaction must be carefully scrutinized.

The cases cited to us by counsel and our independent research, convince us that Norma is correct in her contention, as the following survey of cases found at 45 A.L.R.2d p. 1009, *et seq.* demonstrates:

"In *Tennant* v. *Dunlop* (1899), 97 Va. 234, 33 S.E. 620 . . . the court said:

'He [surviving partner] *cannot place the representative of the deceased partner at arm's length, and seek to obtain a profitable bargain for himself. Having generally a superior knowledge of the assets and their value, it is his bounden duty, in purchasing the interest of the deceased partner, to acquaint his representative with full information as to the assets and the facts from which their value may be estimated or inferred. It is not sufficient that he does not with-*

*hold or conceal such information, but it is incumbent on him to disclose voluntarily all within his possession or knowledge from which a sound judgment as to the value of the interest may be formed. He cannot remain passive, but must make a frank and honest disclosure.'* [Our emphasis.]

In *Heath* v. *Waters* (1879), 40 Mich. 457, the court found from the evidence that the purchasing partner had acted fraudulently and without good faith in arriving at the supposedly appraised value of the deceased partner's interest, and in thus securing a transfer from the widow of such at an inadequate valuation. An accounting was ordered in which it was to be considered that the use of the property thus wrongfully appropriated was a continued use of partnership property. *In considering the duty which the purchasing partner owed to the widow, who represented the deceased partner, the court said: 'As surviving partner he possessed exclusively the means of determining just what the assets consisted of. It was his duty, before making any bargain or other dealing with the representative of Elijah's estate, to put her in as complete a condition of knowledge as himself. This would necessarily include not only a statement of assets and liabilities, but such information concerning the business as would indicate the value and advantages of the concern.* This duty would require him, in dealing with a woman not thoroughly familiar with such matters, to use additional care to prevent her from being deceived or imposed upon. *A trustee cannot put himself at arm's length and compel the beneficiary to protect herself.'* [Our emphasis.]

In *Welbourn* v. *Kleinle* (1900), 92 Md. 114, 48 Atl. 81, where the representative of a deceased partner questioned the fairness and adequacy of the valuation of an item included in the sale of the deceased partner's interest to the surviving partner, the court stated that it was immaterial to inquire as to the accuracy of designating a surviving partner as a trustee; that he is a trustee in a sense, sustaining a fiduciary relation to the representative of the deceased, and held to the duties of a trustee with regard to dealings with the partnership assets. *It was further held that, because of the dangerous inequality of knowledge with respect to a purchase and sale of the deceased partner's interest, such transaction would be closely examined to see that the highest good faith and fairness were exercised; that the surviving partner must disclose all facts which are material to the accurate valuation of the subject-matter, and that even an innocent withholding of knowledge, where the purchaser*

*himself is not aware of its importance, will be ground for relief.* [Our emphasis.]

In *Welbourn* v. *Kleinle* (1900), 92 Md. 114, 48 Atl. 81, it was said that an exception to the rule that a fiduciary may not purchase the trust property is made in the case of a surviving partner, *but since such transaction will be carefully scrutinized and upheld only if they appear to be fair and just, it is not necessary to establish that fraud or imposition has been practised by the surviving partner, the burden being on him to show the fairness, adequacy, and equity necessary* to sustain the transaction." [Our emphasis.]

Our Indiana Supreme Court has likewise had occasion to speak on the fiduciary relationship which exists between a surviving partner(s) and the beneficiaries of the deceased partner's estate. In *Moorman* v. *Moorman* (1948), 226 Ind. 192, 79 N.E.2d 112, at p. 114, it was stated:

"The appellees claimed payment in full of the interest of the appellant, *but it does not seem that the appellees ever made a full disclosure to the appellant or any heir of the amount and value of the partnership property at the time of the death of the deceased member. A surviving partner does not deal at arms length with the heirs of the deceased one. As to such persons he must make an open and full disclosure because the heirs are at a big disadvantage in dealing with surviving partners. They do not know the extent of the property owned by the partnership, nor are they always informed as to the amount of business done or the value of the partnership . . . A surviving partner is under obligation to make a full disclosure of the nature and extent of partnership property, when he is involved in winding up its affairs, or in disposing of the interest of a deceased partner. . . .*" (Citations omitted.) (Our emphasis.)

A synthesis of the above cases clearly demonstrates the high degree of good faith which must be exhibited by a surviving partner in order to fulfill his fiduciary duty when dealing with those persons interested in the estate of the deceased partner.

Before we state our precise holding in this case, we think it important to state clearly when we *do not* hold. We do not

hold that partners cannot enter into a binding agreement allowing a surviving partner to purchase the partnership interest of his deceased partner. Also, we do not hold that the surviving partner cannot serve in the capacity of executor or administrator of his deceased partner's estate. IC 1971, 23-4-1-1 and 23-4-3-1 (Burns Code Ed.) do not provide otherwise.

We hold that because of the conflict of interest which inherently exists between a surviving partner and the beneficiaries of a deceased partner's estate, in agreements to continue the partnership following a partner's death, the surviving partner(s) must make a full disclosure of all assets which arguably belong to the partnership upon request of the deceased partner's executor, and if the surviving partner is serving in the capacity of executor or administrator of his deceased partner's estate, he must make an equally complete disclosure upon request to any interested beneficiary of the deceased partner.

Since Barton and Warren did not render a complete accounting of the assets of Martinsville Plaza upon the request of Norma, we reverse and remand this opinion with directions to the trial court to have conducted a complete audit of the assets of Martinsville Leasing and Martinsville Plaza as of the date of Fred's death, July 24, 1971, and for further proceedings not inconsistent with this opinion.

Robertson, C.J., concurs; Hoffman, J., (participating by designation) concurs.

NOTE.—Reported at 352 N.E.2d 767.